# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| CASSIE BOWEN, DANIEL JEFF GALLEGOS, CAROL GRIEGO, FRANCISCO MELENDEZ, REYNALDA MONTOYA, BOBBY RAY MORA, GARY PREZBINDOWSKI, WILLIAM ANTHONY SANCHEZ, BARBARA TURPIN, | |
| *Plaintiffs*, | No. 1:24-cv-00058 |
| v. | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY; ANGELA GLADWELL, in her official capacity as Administrator of the Federal Emergency Management Agency, | |
| *Defendants*. | |

# COMPLAINT

## INTRODUCTION

1.     Plaintiffs are individuals damaged by the Hermit's Peak/Calf Canyon Fire ("Fire"), which were started by the federal government. The historic fire, and subsequent flooding, had devastating impacts on residents of New Mexico.

2.     Congress enacted the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPFAA" or the "Act") (Pub. L. 117-180, 136 State. 2168 (2022)) to compensate victims of the Hermit's Peak Fire. Congress designated the Federal Emergency Management Agency's ("FEMA") as the administrator of claims under the HPFAA and directed FEMA to expedite payments to victims of the Fire. Among its statutory requirements, the Act mandated that FEMA notify claimants of their compensation offer within 180 days of their claim being submitted.

3.     Despite its statutory obligations, FEMA has delayed compensating Plaintiffs and other claimants—directly violating the text and purpose of the HPFAA. Specifically, FEMA has failed to comply with the requirement to process claims within 180 days in two distinct ways.

4.     First, FEMA unilaterally decided that the 180-day deadline would not start when a claim was submitted but, rather, once FEMA "acknowledged" the claim. In some instances, this was as much as five months after the claim was actually submitted. When confronted with this delay, FEMA stated that it does not deem the 180-day requirement to start until FEMA acknowledges receipt of the claim, allowing FEMA to decide when, what order, and which claims it will process for payment. FEMA's improper interpretation has also resulted in ethical violations of FEMA providing preferential treatment to certain claimants since it is not processing the claims as they are received. FEMA's improper interpretation has allowed FEMA to develop a policy of delaying claims submitted by claimants. FEMA's inaction resulted and will continue to result in delaying Plaintiffs and other fire victims desperately needing payments to repair or rebuild their damaged homes and property, while they incur significant expenses on temporary and alternative housing.

5.     Second, FEMA is not even complying with its own arbitrarily applied deadline. Specifically, FEMA has not responded to any of

Plaintiffs' claims, even though more than 180 days have passed from when FEMA acknowledged their claims.

6.     Plaintiffs are forced to file this action get the relief due to them under the HFPAA and enforce FEMA's compliance with its requirements under the HFPAA. Plaintiffs have incurred and continue to incur significant loss and damage as a result of FEMA's failures and inactions. Accordingly, Plaintiffs seek monetary damages, sanctions, attorney fees and costs, declaratory, injunctive, and other appropriate reliefs against FEMA for its failure to comply with the 180-day payment deadline mandated under section 104(d)(1)(A)(i) of the HPFAA from the date the claim is submitted and issue an order that FEMA is required to process claims within 180 days of when they are submitted as mandated under the HPFAA.

## JURISDICTION & VENUE

7.     This Court has jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, and 28 U.S.C. §§ 1346 and 2671 because a United States agency is a defendant.

8.     This Court has jurisdiction under 28 U.S.C. § 1361 because this action seeks to compel an officer or employee of the United States or any agency thereof to perform a duty owed to Plaintiffs.

9.     This Court has jurisdiction under 5 U.S.C. §§ 701–706, and 28 U.S.C. § 2201–2202, because this action is brought by persons adversely affected by agency action and seeks to right a legal wrong due to agency action as set forth in 5 U.S.C. §§ 701 and 702. Defendant's issuance of the Final Rule (RIN 1660-AB14; 44 CFR 296) (the "Rule") on August 29, 2023, constitutes a final agency action subject to judicial review under 5 U.S.C. §§ 704 and 706. Further, the Rule shows an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). Accordingly, this Court has jurisdiction to grant declaratory relief, injunctive relief, mandamus relief, and/or other relief pursuant to 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 2201–2202.

10.     Venue is proper in this Court under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(B)–(C) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, a substantial part of property that is the subject of the action is situated in this judicial district, and/or Plaintiffs reside in this judicial district.

## PARTIES

11.     Plaintiffs are individuals who suffered property damage in the Fire and submitted claims to FEMA. It has now been more than 180 days from both [1] the date Plaintiff submitted the claim and [2] from when FEMA acknowledged the claim.

12.     Below is a chart depicting the dates Plaintiffs submitted their claims, the date FEMA acknowledged the claim, and 180 days from the date FEMA acknowledged the claim, which has since passed.

| **Name** | **Date NOL Submitted** | **Date NOL Acknowledged** | **Date Offer Due (180 Days From Acknowledged)** |
| --- | --- | --- | --- |
| Gary Prezbindowski | 04/23/2023 | 07/19/2023 | 01/15/2024 |
| Daniel Jeff Gallegos | 04/27/2023 | 07/19/2023 | 01/15/2024 |
| Carol Griego | 04/27/2023 | 07/19/2023 | 01/15/2024 |
| William Anthony Sanchez | 04/28/2023 | 07/19/2023 | 01/15/2024 |
| Francisco Melendez | 05/02/2023 | 07/19/2023 | 01/15/2024 |
| Barbara Turpin | 05/02/2023 | 07/19/2023 | 01/15/2024 |
| Reynalda Montoya | 05/03/2023 | 07/19/2023 | 01/15/2024 |
| Bobby Ray Mora | 05/03/2023 | 07/19/2023 | 01/15/2024 |
| Cassie Bowen | 07/13/2023 | 07/19/2023 | 01/15/2024 |

13.     Defendant FEMA is an executive agency of the United States government, and bears responsibility in whole or part for the

acts or omissions complained herein, including promulgating the Rule. Under the HPFAA, FEMA is directed to receive, process, and pay claims in accordance with the HPFAA.[1] Mr. Adrian Sevier is Chief Counsel of FEMA. As the principal legal officer for FEMA, Mr. Sevier is legal advisor to the FEMA Administrator and FEMA senior leadership, serves as the agency "Ethics Official", and is responsible for the direction and management of the Office of Chief Counsel. He is ultimately responsible for the professional conduct of FEMA's Hermit's Peak/Calf Canyon Claims Office ("HPCC" or the "Claims Office") Claims Office in New Mexico.

14.    Defendant Angela Gladwell, in her official capacity, is the Director of the Claims Office in New Mexico. Defendant Gladwell signed the Memorandum of Understanding ("MOU") with the Natural Resources Conservation Service ("NRCS") on behalf of FEMA. She is the principal officer in charge of FEMA's Claims Office in New Mexico.

---

[1]    *See* Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(a)(2), 136 Stat. 2168, 2170 (2022).

7

BACKGROUND

1.    **The federal government enacted the HPFAA to promptly compensate victims of the Hermit's Peak/Calf Canyon Fire.**

15.    On April 6, 2022, the U.S. Forest Service initiated a prescribed burn on federal land in the Santa Fe National Forest in San Miguel County, New Mexico. The prescribed burn got out of control, resulting in a wildfire that spread to adjacent, non-federal land, and merged with another fire. [2] The fire, known as the Hermit's Peak/Calf Canyon Fire, is the largest fire in New Mexico history. It forced thousands of residents to evacuate and ultimately destroyed 903 structures, including several hundred homes, and burned 341,471 acres of land, trees, and vegetation.

16.    The President declared the Hermit's Peak Calf Canyon Fire "a major disaster," and Congress acknowledges its impact, recognizing forced evacuations, and damage or destruction of state, local, tribal, and private property in Colfax, Mora, and San Miguel counties in New Mexico.[3] The President reaffirmed that the people of New Mexico will

---

[2]      *Id.*, § 102(a)(1)–(4), 136 Stat. at 2168.

[3]      *Id.*, § 102(a)(5)–(6), (9), 136 Stat. at 2168–69.

have the full support of the federal government, and that every effort will be made to provide immediate help to people in the impacted communities and support the State throughout its recovery.

17.     Congress determined that "the United States should compensate the victims of the Hermit's Peak Fire."[4]

18.     On September 30, 2022, Congress enacted—and the President signed—the HPFAA.[5]

19.     The HPFAA's stated purposes are "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire" and "to provide for the expeditious consideration and settlement of claims for those injuries."[6] To that end, the HPFAA states that claimants are entitled to "payment under this Act" for "actual compensatory damages."[7]

---

[4]     *Id.*, § 102(a)(10), 136 Stat. at 2169.

[5]     Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. at 59,731.

[6]     Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 102(b)(1), 136 Stat. 2168, 2169 (2022).

[7]     Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

20.     Congress allocated $3.95 billion to compensate victims of the

Hermit's Peak/Calf Canyon Fire under the HPFAA.[8]

**2.      As the administrator of claims under the HPFAA, FEMA is required to follow ethical standards of fairness and integrity.**

21.     The HPFAA designated FEMA as the administrator of

claims under the Act. To that end, the HPFAA directed FEMA to

establish a "Claims Office" to "receive, process, and pay claims in

accordance with this Act."[9]

22.     The Office shall be funded from funds made available to the

Administrator for carrying out processing and paying claims under the

HPFAA.[10]

---

[8]     FEMA, FAQ: Hermit's Peak/Calf Canyon Fire Assistance Act Final Rule (Aug. 28, 2023), https://www.fema.gov/fact-sheet/faq-hermits-peakcalf-canyon-fire-assistance-act-final-rule#:~:text=The%20Hermit%27s%20Peak%2FCalf%20Canyon,major%20concerns%20from%20the%20community.

[9]     Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

[10]     Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

23.    The Administrator is authorized to appoint an independent claims manager to head the Office and assume the duties of the Administrator under the HPFAA.[11]

24.    In determining and settling a claim under the HFPAA, the Administrator shall determine only: [1] whether the claimant is an injured person; [2] whether the injury that is the subject of the claim resulted from the Fire; [3] whether the person or persons are otherwise eligible to receive payment; and [4] whether sufficient funds are available for payment and if so, the amount, if any to be allowed and paid under the HFPAA.[12]

25.    In discharging its duties under the HPFAA, FEMA is required to act in accordance with its own policies, procedures, mission statement, and ethical standards, as well as policies, procedures, and ethical standards for federal agencies and employees generally.

26.    FEMA's stated mission is to help people before, during, and after disasters. Whatever the disaster, FEMA is supposed to lead the

---

[11]    Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

[12]    Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2171 (2022).

11

federal government's response, and provide disaster assistance to individuals, families, and businesses whose property has been damaged or destroyed.[13] The FEMA Administrator is the principal advisor to the President, the Homeland Security Council, and the Secretary of Homeland Security for all matters relating to emergency management in the United States.

27.    FEMA's Core Values of Compassion, Fairness, Integrity, and Respect guide the actions and behavior of its employees. Public service is a public trust. Maintaining strong standards of behavior and ethical conduct also maintains public trust and confidence in FEMA and its workforce.[14] All FEMA and other federal employees are required to maintain especially high standards of honesty, impartiality, character, and conduct to ensure the proper performance of Government business and the continual trust and confidence of the nation's citizenry.[15] Each employee has a responsibility to the United States Government and its citizens to place loyalty to the Constitution, laws, and ethical principles

---

[13]    https://www.dhs.gov/employee-resources/federal-emergency-management-agency-fema

[14]    FEMA Directive 123-0-2-1

[15]    *Id.*

above private gain. Employees shall put forth honest effort in the performance of their duties. Employees shall act impartially and not give preferential treatment to any private organization or individual. Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.[16]

### 3.    FEMA has violated the HPFAA provision that entitles claimants to compensation within 180 days of filing a Notice of Loss.

28.    The HPFAA expressly states that "[n]ot later than 180 days after the date on which *a claim is submitted* under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim."[17] Accordingly, FEMA must pay claims within 180 days of the claim being submitted.

29.    On or about August 29, 2023, FEMA issued its Final Rule and regulations for the administration of the claims process.[18] In its final rule, FEMA indicated it would not process claims 180 days after it

---

[16]    5 CFR § 2635.101

[17]    Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2171 (2022), italics added.

[18]    44 CFR 296, also 88 FR 59730

receives a claim. Instead, FEMA unilaterally decided it would only process claims within 180 days after FEMA "acknowledges" the claim, an interpretation of the HPFAA that would allow FEMA to delay payments indefinitely and arbitrarily. [19]

30.    Rather than proceed with the required unbiased manner of processing claims as they are received, FEMA's policy allows it to unilaterally determine which claims to process and which claims languish. FEMA's interpretation has allowed FEMA to impose significant delays, allowing months to pass in some cases before it acknowledges a claim. Accordingly, FEMA has failed to pay claims within 180 days from submission as required.

31.    Plaintiffs submitted their claims to FEMA between January and July of 2023. Plaintiffs' claims submitted are past 180 days from submission and past 180 days from FEMA's acknowledgment. As of the date of filing this action FEMA has not issued a settlement offer to any claim submitted by Plaintiffs.

---

[19]    FEMA, FAQ: Hermit's Peak/Calf Canyon Fire Assistance Act 44 CFR 296, 88 FR at 59761.

## COUNT I
### (Violation of APA; 5 U.S.C. § 706—Contrary to Law)

32.   All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

33.   The Administrative Procedures Act ("APA") requires courts to "hold unlawful and set aside" agency action that is "not in accordance with law."[20]

34.   FEMA is an "agency" under the APA.[21]

35.   The Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."[22]

36.   The Rule is not in accordance with the law because the HPFAA entitles claimants to the following action by FEMA: "[n]ot later than 180 days after the date on which a claim is submitted under this

---

[20]   5 U.S.C. § 706(2)(A).

[21]   5 U.S.C. § 551(1).

[22]   5 U.S.C. §§ 551(4), (13), 704.

15

Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim."

37.     FEMA's contrary interpretation of the law is unsupported by any authority. Indeed, it is contrary to the plain text and stated aim of the HPFAA.

38.     The Rule harms Plaintiffs and other similarly situated Fire victims by depriving them of compensation to which they are entitled under the HPFAA.

39.     By promulgating the Rule, FEMA has acted contrary to law, and is thus in violation of the APA. The Rule is therefore invalid and should be set aside.

40.     Plaintiffs have been damaged by FEMA's actions and inactions. Plaintiffs are also entitled to damages and sanctions for FEMA's deliberate indifference to Plaintiffs' rights and FEMA's obligations under the HPFAA.

## COUNT II

## (Violation of APA; 5 U.S.C. § 706—Exceeded Statutory Authority)

41.     All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

42.    The APA requires courts to "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[23]

43.    The Rule is in excess of FEMA's statutory jurisdiction, authority, and limitations: The HPFAA requires FEMA to respond to Plaintiffs' claim within 180 days from when the claim is submitted, not from when FEMA decides to acknowledge the claim. By choosing to categorically withhold compensation past 180 days, the Rule exceeds FEMA's statutory authority and infringes on Congress's power to enact legislation and allocate funds for designated purposes.

44.    By promulgating the Rule, FEMA has acted in excess of its statutory jurisdiction, authority, and limitations under the HPFAA. The Rule is therefore invalid and should be set aside.

45.    Plaintiffs have been damaged by FEMA's actions and inactions. Plaintiffs are also entitled to damages and sanctions for FEMA's deliberate indifferent to Plaintiffs' rights and FEMA's obligations under the HPFAA.

---

[23]    5 U.S.C. § 706(2)(C).

COUNT III
**(Violation of APA; 5 U.S.C. § 706—Arbitrary, Capricious, and Abuse of Discretion)**

46.     All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

47.     The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary, "capricious," or an "abuse of discretion."[24]

48.     The Rule is arbitrary, capricious, and an abuse of discretion: FEMA offers no reasoned explanation for misconstruing and ignoring the plain text and stated aim of the HPFAA. FEMA offers no substantial justification for refusing to award claimants compensation within the timeframe mandated under the HPFAA and is beyond its own patently erroneous interpretation of the HPFAA.

49.     FEMA's arbitrary and capricious abuse of discretion harms Plaintiffs and other similarly situated Fire victims by depriving them of compensation to which they are entitled under the HPFAA.

---

[24]     5 U.S.C. § 706(2)(A).

50.     By promulgating the Rule, without a proper factual or legal

basis, Defendants have acted arbitrarily and capriciously, have abused

their discretion, have otherwise acted not in accordance with law, and

have taken unlawful action in violation of the APA. The Rule is

therefore unlawful and should be set aside as arbitrary and capricious

under 5 U.S.C. § 706(2)(A).

## COUNT IV
## (Declaratory Relief for Violation of APA; 5 U.S.C. § 706)

51.     All foregoing paragraphs of this Complaint are realleged and

incorporated herein by reference.

52.     The APA requires courts to "hold unlawful and set aside"

agency action that is "in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right."[25]

53.     FEMA is an "agency" under the APA.

54.     The Rule constitutes "[a]gency action made reviewable by

statute and final agency action for which there is no other adequate

remedy in a court."[26]

---

[25]     5 U.S.C. § 706(2)(A).

[26]     5 U.S.C. §§ 551(4), (13), 704.

55.    The Rule is not in accordance with the law because the HPFAA entitles claimants to be paid no later than 180 days after the date on which a claim is submitted under the HPFAA.

56.    FEMA's position that the mandatory 180-day deadline would not start until claims were "acknowledged" is in excess of FEMA's statutory jurisdiction, authority, and limitations. The HPFAA requires FEMA to determine and fix the amount, if any, to be paid for the claim within 180 days after the date on which a claim is submitted under this Act.

57.    FEMA has also taken the position in its Rule that it "does not believe a Notice of Loss can be submitted until it has been reviewed for sufficiency and receipt has been acknowledged by FEMA."

58.    The Rule harms Plaintiffs and other similarly situated Fire victims by depriving them of timely compensation to which they are entitled under the HPFAA.

59.    The Rule also results in ethical violations of FEMA's requirements to process the claims fairly and impartially.

60.    By choosing to categorically delay processing and paying claims FEMA exceeds its statutory authority and infringes on

Congress's power to enact legislation and allocate funds for designated purposes.

61.    FEMA's reason that the Claims Office was not properly staffed is not justified. The HPFAA established the Office and allocated funds for the Administrator to efficiently process and pay claims under the Act. Moreover, delayed payments result in more funds being paid toward staff, the Administrator, the Claims Office, and other administrative functions rather than to the victims of the Fire.

62.    Plaintiffs request this Court to declare, under 28 U.S.C. § 2201, that the HPFAA's 180-day deadline begins from the date a claimant submits their claim, not when FEMA "acknowledges" the claim.

63.    Plaintiffs request this Court to declare, under 28 U.S.C. § 2201, that FEMA must immediately pay Plaintiffs' claims that exceed the 180-day deadline from the date of submission.

64.    Plaintiffs seek this Court to declare, under 28 U.S.C. § 2201, that FEMA must determine and settle the amount payable for a claim within 180 days following the claim's submission under the HPFAA.

**PRAYER FOR RELIEF**

Wherefore Plaintiffs respectfully request that this Court:

1.      Issue a declaratory judgment that the mandatory 180-day deadline under section 104(d)(1)(A)(i) of the HPFAA begins from the date a claimant submits its claim, not when FEMA "acknowledges" the claim;

2.      Issue a declaratory judgment that FEMA must immediately pay Plaintiffs' claims that exceed the 180-day deadline from the date of submission;

3.      Issue a declaratory judgment that FEMA must comply with the 180-day payment deadline mandated under section 104(d)(1)(A)(i) of the HPFAA;

4.      For all other declaratory relief as set forth herein;

5.      Award damages and/or sanctions on any basis permitted under the APA, or any other law;

6.      Award Plaintiffs costs and reasonable attorney's fees;

7.      Interest on the submitted claims; and

8.     Grant such other relief as the Court deems just and proper.

Dated: January 16, 2024                  Respectfully submitted:

                                         SINGLETON SCHREIBER, LLP

                                         */s/ Brian S. Colón*
                                         Brian Colón
                                         Vern Payne
                                         Jacob Payne
                                         Robert J. Sánchez
                                         SINGLETON SCHREIBER LLP
                                         6501 Americas Pkwy. NE, Ste. 670
                                         Albuquerque, NM 87110
                                         (505) 587-3473
                                         *bcolon@singletonschreiber.com*
                                         *vpayne@singletonschreiber.com*
                                         *jpayne@singletonschreiber.com*
                                         *rsanchez@singletonschreiber.com*

                                         Gerald B. Singleton, *PHV pending*
                                         Benjamin I. Siminou
                                         SINGLETON SCHREIBER LLP
                                         591 Camino de la Reina, Ste 1025
                                         San Diego, CA 92108
                                         (619) 704-3288
                                         *gsingleton@singletonschreiber.com*
                                         *bsiminou@singletonschreiber.com*